UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANISUR R.,<br><br>                Petitioner,<br><br>        v.<br><br>MERRICK GARLAND, et al.,<br><br>                Respondents. | CASE NO. 2:24-cv-02132-JHC-TLF<br><br>ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |

# I
## INTRODUCTION

This matter comes before the Court on Petitioner's Emergency Motion for Temporary Restraining Order, Dkt. # 2, filed with his Petition for Writ of Habeas Corpus, Dkt. # 1. Petitioner is a native and citizen of Bangladesh who is detained at Northwest Immigration and Customs Enforcement (ICE) Processing Center in Tacoma, Washington. Dkt. # 1 at 1, ¶ 1. He has been detained for about six months. *Id.* at 5, ¶ 21. Petitioner asks the Court to order his immediate release and to enjoin Respondents from transferring him to a different facility during the pendency of these proceedings or, in the alternative, to require ICE to conduct a custody review. Dkt. # 2 at 5. The Court has reviewed the materials filed in support of and in opposition

to the motion, the rest of the case file, and the governing law. Being fully advised, the Court DENIES Petitioner's motion.

## II
### BACKGROUND

On June 21, 2024, Petitioner entered the United States in Arizona, where he was apprehended by immigration authorities. That day, Customs and Border Patrol issued an expedited removal order for Petitioner under 8 U.S.C. § 1225(b)(1)(A)(i), which requires an immigration officer to order an inadmissible noncitizen removed from the United States without further review unless the noncitizen expresses an intent to apply for asylum or a fear of persecution. Dkt. # 1-1 at 15–16. In July 2024, Petitioner was transferred to Northwest ICE Processing Center. Dkt. # 7 at 2, ¶ 5. Petitioner later expressed fear of returning to Bangladesh, postponing his removal. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (requiring detention "pending a final determination of credible fear of persecution").

On August 21 and 27, 2024, an asylum officer conducted a credible fear interview, in which Petitioner said that he joined the Liberal Democratic Party (LDP) in 2018 and led political activities opposing the Awami League, the governing party in Bangladesh. Dkt. # 1-1 at 2–5. Petitioner explained that members of the Awami League sent him death threats and stabbed him, causing him to be hospitalized for two days. *Id.* On August 28, 2024, the asylum officer concluded that Petitioner's testimony was credible. *Id.* at 12–13. But the asylum officer also concluded that Petitioner did not have a credible fear of future persecution because the Prime Minister of the Awami League resigned on August 5, 2024, allowing a new administration to take over. *Id.* at 13, 29. Petitioner requested review of the negative credible fear determination by an Immigration Judge (IJ).

On September 11, 2024, an IJ affirmed the negative credible fear determination. *Id.* at 54–55. What happened next is disputed. Petitioner says that the next day, he submitted a request for further review of the negative credible fear determination to the "Asylum Office" and that this "request for re-determination remains pending." Dkt. # 1 at 5, ¶ 19; *see* 8 C.F.R. § 208.30(g)(1)(i) (allowing discretionary reconsideration of a negative credible fear finding affirmed by an IJ). And without specifying when, Petitioner says that he submitted "a Request for Reinterview" with the "Asylum Office" because the asylum officer did not know that Petitioner qualified for an exception to an interim rule limiting asylum relief. *See* Dkt. # 1 at 3–4, ¶¶ 14, 17 (citing Dkt. # 1-1 at 10–11). Petitioner asserts that the "Request for Reinterview [] remains pending." *Id.* at 4, ¶ 17. Petitioner also says that, at some point after being detained for over 90 days, he submitted a "request for release pending his removal" and that "[t]here is no indication that ICE reviewed [his] request for release pending his removal." *Id.* at 6, ¶ 23.

Respondents do not directly mention the "request for re-determination" of the negative credible fear determination. They say that on October 16, 2024, ICE spoke with Petitioner to get information necessary to obtain a travel document. Dkt. # 6 at 4 (citing Dkt. # 7 at 2–3, ¶ 10). Because Petitioner said that he would appeal the IJ's decision, ICE decided to wait to submit a travel document application. *Id.* But Respondents decided to proceed with obtaining travel documents once they learned that Petitioner did not file a petition for review with the Ninth Circuit. *Id.* (citing Dkt. # 7 at 2–3, ¶¶ 10–13). Respondents do not mention at all the "Request for Reinterview" or the interim final rule limiting asylum relief. Nor do Respondents mention Petitioner's "request for release pending his removal."

Respondents say that on December 27, 2024, ICE headquarters confirmed with its Seattle officers that removals to Bangladesh will continue. *Id.* (citing Dkt. # 7 at 3, ¶ 12). They say that on December 30, 2024, Petitioner refused to cooperate with ICE by declining to fill out travel

ORDER DENYING EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 3

document forms and preventing ICE from taking his passport photo by looking away from the camera. *Id.* at 4–5 (citing Dkt. # 7 at 3, ¶ 13). Deportation Officer George Chavez declares, "ICE expects that a travel document for Petitioner will be issued once Petitioner begins cooperating with ICE to secure a travel document and ICE will be able to effect Petitioner's removal to Bangladesh." *Id.* at 5 (citing Dkt. # 7 at 3, ¶ 16).

### III
### DISCUSSION

A petitioner seeking a writ of habeas corpus must establish that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner mainly brings a Fifth Amendment due process challenge to indefinite detention under 8 U.S.C. § 1231(a) by relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. # 2 at 3, ¶ 7. Petitioner also brings claims under: (1) the Suspension Clause, U.S. Const. art. I § 9, cl.2; (2) the Fourth Amendment's prohibition against unreasonable seizures; and (3) the Eighth Amendment's prohibition against cruel and unusual punishment. Dkt. # 1 at 7, ¶¶ 26, 28.

A.   TRO Standards

A temporary restraining order (TRO) is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction). A petitioner seeking a TRO must establish: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, a petitioner who shows only that there are "serious questions going to the merits" can satisfy the *Winter*

requirements by establishing that the "balance of hardships [] tips sharply towards [the petitioner]" and that the remaining two *Winter* factors are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

B.  Likelihood of Success on the Merits and Irreparable Harm

Based on the briefing and the unresolved factual questions at this stage, Petitioner does not show that he is likely to succeed on the merits. Because Petitioner does not show that he is likely to succeed on his constitutional claims, he has not shown that he will likely suffer irreparable harm.[1] *See Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.") (quotation marks and citation omitted).

1.  Fifth Amendment claim

Petitioner does not show that he is likely to succeed on his Fifth Amendment claim under *Zadvydas*. In *Zadvydas*, the Supreme Court addressed the legality of indefinitely detaining noncitizens who are ordered removed under 8 U.S.C. § 1231(a)(6). 533 U.S. at 682. The Supreme Court held that detaining a noncitizen for six months is presumptively reasonable. *Id.* at 701. After six months, a noncitizen does not necessarily have to be released. *Id.* But a noncitizen has an opportunity to make a showing that there "is no significant likelihood of removal in the reasonably foreseeable future," which the government must then rebut. *Id.*

Petitioner does not address whether *Zadvydas* applies to detention pending removal orders under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) or cite authority for when the six-month period for *Zadvydas* begins. It is unclear whether *Zadvydas* applies to § 1225(b)(1)(B)(iii)(IV) because

---

[1] Petitioner contends that he would also face irreparable harm if he were transferred to another facility because he would be unable to speak with his counsel and a family friend. Dkt. # 9 at 5–6. The Court declines to consider this contention because it is raised for the first time in Petitioner's reply brief. *See United States v. Vidican*, 2010 WL 889960, at *1 (W.D. Wash. Mar. 10, 2010).

unlike § 1231(a)(6), it provides for mandatory, rather than discretionary, detention.[2]  It is also unclear whether the six-month period under *Zadvydas* begins before or after proceedings regarding Petitioner's negative credible fear determination have concluded.  Relying on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Respondents suggest that *Zadvydas* does not apply to § 1225(b)(1) but also say that Petitioner's claim fails even if *Zadvydas* applied to the statute.  Dkt. # 6 at 8, 10.  Respondents also contend that the six-month period for *Zadvydas* would not begin until after review of Petitioner's negative credible fear determination is complete but cites no clear authority for this proposition.  *Id.*

Even assuming that *Zadvydas* applies to § 1225(b)(1) and that the six-month period has elapsed, Petitioner does not show that there is no significant likelihood of removal in the reasonably foreseeable future.  When Petitioner filed his emergency motion for TRO, he had been detained for about six months.  Thus, "what counts as the 'reasonably foreseeable future'" is most generously construed before it begins "to shrink." *Zadvydas*, 533 U.S. at 701.  The parties disagree as to the cause of Petitioner's continued detention.  Petitioner says that Respondents are processing his various requests (for review of his negative credible fear determination, for another asylum interview, or for release pending removal); Respondents suggest that there are no such pending requests, and that Petitioner is refusing to cooperate with immigration officials' attempts to obtain travel documents.

---

[2] A court in this district has held that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (quoting adopted report and recommendation).  In his habeas petition, Petitioner alternatively seeks release "on a reasonable bond." Dkt. # 1 at 8, ¶ 32.  But Petitioner makes no legal argument for why such relief is warranted.  Petitioner's reliance on *Zadvydas* is insufficient because although the court in *Banda* discusses *Zadvydas*, it adopts a "multi-factor test" to "determine whether § 1225(b) detention has become unreasonable." 385 F. Supp. 3d at 1117–18.  Petitioner also does not expressly request a bond hearing in his TRO motion.  *See* Dkt. # 2 at 5.

ORDER DENYING EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 6

1   At this stage, unresolved factual questions as to the cause of Petitioner's continued
2   detention are not enough for the Court to conclude that Petitioner is "likely to succeed on the
3   merits." Petitioner has not specifically shown when and where he filed his various requests for
4   relief, much less shown a likelihood that they will not be adjudicated in a reasonable time. That
5   the resolution of Petitioner's requests have "no clear end date does not mean that there is no
6   significant likelihood of removal in the reasonably foreseeable future."[3] *Aden v. Nielsen*, 409 F.
7   Supp. 3d 998, 1022 (W.D. Wash. 2019); *see also Del Toro-Chacon v. Chertoff*, 2008 WL
8   687445, at *7–8 (W.D. Wash. Mar. 10, 2008) (detention is not indefinite where removal is
9   delayed by a petitioner's challenges to agency decisions and "there is no showing that the
10  government has caused any unreasonable delay").

   2.   Remaining claims

   Nor does Petitioner show that he is likely to succeed on the merits of any of his
remaining claims. Petitioner claims that his alleged indefinite detention violates the Suspension
Clause but cites only *Zadvydas* to support this contention. Dkt. # 1 at 7, ¶ 26. The Court
concludes that Petitioner has not shown that he is likely to succeed on this claim for the same
reasons discussed *supra*, Section III.B.1. The Court also concludes that Petitioner has not shown
that he is likely to succeed on his Fourth and Eighth Amendment claims because they are
conclusory. Dkt. # 1 at 7, ¶ 28.

C.   Balance of the Equities and Public Interest

   The balance of the equities and the public interest favors Petitioner. When the
government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*,

---

[3] Petitioner also asserts that he is entitled to a custody review because "[g]enerally, Immigration and Customs Enforcement will conduct a 90 day custody review when an order of removal becomes final." Dkt. # 1 at 6, ¶ 23. But Petitioner cites no authority to support this assertion.

ORDER DENYING EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 7

556 U.S. 418, 435 (2009).  While there is a public interest in the enforcement of immigration laws, Respondents do not show that Petitioner cannot be released in a manner that ensures that he will comply with law enforcement.  Dkt. # 6 at 13.  Thus, the government's public interest in enforcing immigration laws does not outweigh the public interest in "prevent[ing] the violation of a party's constitutional rights."  *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation omitted).

But the balance of equities does not tip sharply in favor of Petitioner.  The cause of Petitioner's continued detention is unclear, and the period of presumptively unconstitutional detention—if any—has, at most, just begun following the six-month mark set forth in *Zadvydas*.  Because the balance of equities does not strongly favor Petitioner, the Court does not consider whether Petitioner has satisfied the *Winter* factors by showing that there are "serious questions going to the merits" rather than a likelihood of success on the merits.  *All. for the Wild Rockies*, 632 F.3d at 1135.

### IV
### CONCLUSION

For these reasons, the Court DENIES Petitioner's emergency motion for temporary restraining order.

Dated this 7th day of January, 2025.

*[signature]*

John H. Chun
United States District Judge

ORDER DENYING EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 8