UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANISUR RAHMAN,<br><br>                Petitioner,<br>    v.<br><br>MERRICK GARLAND,<br><br>                Respondent. | Case No. 2:24-cv-02132-JHC-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for <u>July 11, 2025</u> |

       Petitioner Anisur Rahman, a native and citizen of Bangladesh, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. He has been detained since June 21, 2024. *Id.* at 5, ¶ 21. On December 23, 2024, he filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody, or in the alternative release "on a reasonable bond until such time as the government removes him". *Id*.

       Petitioner asserts that he is entitled to release because his continued detention violates 8 U.S.C. § 1225(b), his due process rights under the Fifth Amendment, his right against unreasonable seizure under the Fourth, his right against cruel and unusual punishment under the Eighth Amendment, and the Suspension Clause. *Id.*

       The Government has filed a return memorandum and motion to dismiss arguing Petitioner's detention is lawful because he is subject to expedited removal under 8

REPORT AND RECOMMENDATION - 1

U.S.C. § 1225(b)(1)(B)(iii)(IV), which does not impose any limit on the length of detention or provide direction about bond hearings. Dkt. 12. Petitioner, represented by counsel, filed a response to the motion arguing Petitioner's detention has become indefinite in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 15. Although *Zadvydas* concerned a detention under 8 U.S.C. §1231(a)(6), Petitioner nevertheless argues his detention has become indefinite. The Government filed a reply. Dkt. 16.

Upon review of the Government's motion and the relevant record, the Court determined it required additional information to properly address the Government's motion and the petition. Dkt. 17. As explained further below, the Court ordered the parties to apply the multi-factor test detailed in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) to determine whether Petitioner is entitled to a bond hearing[1]. The parties submitted supplemental briefing in response to the Court's Order. *See* Dkts. 18, 20. In Petitioner's supplemental brief, he requests to be released, or in the alternative, to be granted a bond hearing.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the motion to dismiss be DENIED.

## BACKGROUND

A.  Statutory Framework

8 U.S.C § 1225 and 8 U.S.C. § 1231 govern immigration detention.

---

[1] The Honorable John H. Chun noted in his Order Denying Petitioner's Emergency Motion for Temporary Restraining Order that the Petitioner's reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001) appears to be insufficient to determine whether § 1225(b) detention has become unreasonable. Dkt. 10.

REPORT AND RECOMMENDATION - 2

Section 1225 applies to "applicants for admission"—noncitizens[2] who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). There are two categories of applicants for admission, those who fall under § 1225(b)(1) and those who fall under § 1225(b)(2). The parties agree that Petitioner fell under § 1225(b)(1), which applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing § 1225(b)(1)(A)(i)).

Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). But, if a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

---

[2] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See, Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

REPORT AND RECOMMENDATION - 3

The statute does not impose "any limit on the length of detention" pending a decision on the asylum application and does not authorize bond hearings or release on bond. *Jennings*, 583 U.S. at 296-301.

Section 1231 governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8 U.S.C. § 1231(a)(2). The removal period is triggered by the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). If ICE is unable to remove the noncitizen during the removal period, DHS may continue to detain certain noncitizens specified in the statute or release them under an order of supervision. 8 U.S.C. § 1231(a)(6). Section 1231(a)(6), however, does not authorize indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In addition, the Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

B. Statutory Basis for Petitioner's Detention

    i.    Factual Background

As noted above, the parties do not dispute that Petitioner was initially detained under § 1225(b) on June 21, 2024. Dkt. 12 at 3, Dkt. 15 at 1. Petitioner expressed a fear of persecution if returned to Bangladesh, which triggered his referral for a credible fear interview. 8 U.S.C. § 1225(b)(1)(A)(ii).

REPORT AND RECOMMENDATION - 4

On August 21 and 27, 2024, a USCIS asylum officer interviewed Petitioner. Dkt. 7, Declaration of George Chavez I, ¶7; 8 U.S.C. § 1225(b)(1)(B). The asylum officer determined that he did not have a credible fear of persecution if returned to Bangladesh. *Id.* at ¶ 8; 8 U.S.C. §§ 1225(b)(1)(B) & 1225(b)(1)(B)(v) (definition of credible fear of persecution). Petitioner requested a review by an IJ of the negative credible fear determination, and USCIS filed a Notice of Referral to the IJ with the Tacoma Immigration Court on September 6, 2024. *Id.* at ¶ 8; Dkt. 8, Declaration of Michelle Lambert, Exhibit C (Form I-863, Notice of Referral to the IJ); 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

On September 11, 2024, the IJ sustained the negative credible fear finding and returned the case to U.S. Department of Homeland Security ("DHS") to effectuate the underlying expedited removal order. Dkt. 12 at 3-4; Dkt. 15 at 2. Respondents state, on October 16, 2024, Petitioner informed ICE he was going to file an appeal of the IJ's decision. Dkt. 7 at ¶10. In light of this, ICE waited to submit a travel document application. *Id.* Petitioner did not file an appeal.

Respondents state between October 2024 and February 2025, Petitioner did not cooperate with ICE's attempts to obtain the necessary information for the travel document application. Dkt. 7 at ¶¶ 10, 12, 13. *See also* Dkt. 13, Declaration of George Chavez II, ¶ 5; Dkt. 14, Declaration of Michelle Lambert, Exhibit E (Warning for Failure to Depart).

Petitioner filed this habeas corpus petition on December 23, 2024. Dkt. 1. On December 31, 2024, ICE sought to take Petitioner's photograph and Petitioner turned

REPORT AND RECOMMENDATION - 5

1  his head when the deportation officer attempted to take his photo for the travel
2  document. Dkt. 7 at ¶13.
3     Petitioner signed a travel document request and allowed his photograph to be taken
4  on February 5, 2025, after ICE served Petitioner with a Warning for Failure to Depart
5  and a Notice of Failure to Comply. Dkt. 13 at ¶ 8. Petitioner claims, at most 5 weeks can
6  be attributed to Petitioner's actions. Dkt. 20.
7     Respondent initially stated ICE submitted Petitioner's travel document application to
8  the Bangladesh Consulate on February 11, 2025. Dkt. 13 at ¶11. Respondent retracted
9  that statement in their supplemental brief to the Court after ICE realized the travel
10 document request was completed and circulated for internal review on February 11,
11 2025, but not submitted to the Consulate. Dkt. 19, Declaration of Robert Andron, at ¶4.
12 Respondent was unsure if the documents were submitted to the Consulate on March 6,
13 2025, so "out of an abundance of caution," ICE anticipated on resending the travel
14 document requests to the Consulate again on April 25, 2025. *Id.*
15     ii.    The *Banda* Test
16     Neither the Supreme Court nor the Ninth Circuit have settled on a test for
17 assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*,
18 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "[d]istrict courts have
19 grappled with how to address due process challenges to prolonged mandatory
20 detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that
21 prolonged mandatory detention pending removal proceedings, without a bond hearing,
22 will—at some point—violate the right to due process." *Id.* (cleaned up).

REPORT AND RECOMMENDATION - 6

This district has adopted the finding that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). This analysis requires consideration of the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

Where due process requires a bond hearing, the government must provide clear and convincing evidence to justify the noncitizen's continued detention. *Id.* at 1107. The Court should apply the *Banda* analysis, as discussed below.

  a. Length of detention

The length of detention is "the most important factor." *Id.* at 1118. Petitioner has been in custody for almost 12 months. The Court should hold that this factor favors Petitioner. *See Banda*, 385 F.Supp.3d at 1118 (granting bond hearing after 17 months detention and collecting cases granting bond hearings after nine, ten, sixteen, and nineteen months detention).

  b. Likely duration of future detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.' " *Id.* at 1119 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Respondent states it is "in the process of obtaining a travel document for Rahman," but is not aware of how long the process will take. Dkt. 18 at 3. Further, based off of the declaration of Robert Andron, it is unclear if Petitioner's travel documents were resubmitted in April.

The Court declines to speculate as to the likely duration of future detention and finds this factor should be neutral.

    c. Conditions of detention

Third, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he is entitled to a bond hearing." *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (cleaned up). "A claim for punitive detention requires a comparison of the conditions under which civil and criminal detainees 'are held.' " *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz. 2020) (citation omitted).

Petitioner is detained at NWIPC. Petitioner contends that the conditions at the NWIPC are similar to penal confinement, citing to a newspaper article from the Tacoma News Tribune discussing the facility's issues with "under-staffing, limits to outdoor recreation for detainees, and renewed stoppage of funding for a legal-aid information program for people facing deportation." Dkt. 20-1, Declaration of Kelly Vomacka, at 79-83. The article raises concerns about the facility's lack of compliance with medical and sanitary condition requirements. *Id.*

REPORT AND RECOMMENDATION - 8

Petitioner also cites to the ICE Detainee Handbook. *Id.* at 5-78. The ICE Detainee Handbook discusses disciplinary procedures, use of force and restraints, searches, restrictions on privacy, and limited recreation time. *Id.* at 12, 15, 21, 27.

The Court has, upon consideration of evidence provided by the parties, found the conditions at NWIPC, "'similar ... to those in many prisons and jails[,]' ". *See, e.g.*, *Katlong v. Barr*, No. C20-0846-RSL-MAT, 2020 WL 7048530, at *4 (W.D. Wash. Oct. 30, 2020) (quoting *Jennings*, 583 U.S. at 329 (Breyer, J., dissenting)), *report and recommendation adopted*, 2020 WL 7043580 (W.D. Wash. Dec. 1, 2020).

Respondent did not dispute Petitioner's assertion that the conditions of detention at NWIPC are, as a general matter, similar to those in many prisons and jails. Dkt. 18 at 3.

The Court should hold that the conditions of detention factor weighs in Petitioner's favor.

### d.  Delays in Removal Proceedings

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also

to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.*

With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable.... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

The record shows Petitioner caused approximately five weeks of delay by refusing to cooperate with ICE when completing the paperwork for the travel. Yet, even with this delay, Petitioner's detention exceeds 10 months.

With respect to the Government's actions, the Government admits there was some delay as part of the reasonable fear process and ICE's submission of the travel document. Dkt. 18 at 3.

Further, it is unclear based on the record before the Court when Petitioner's travel documents were sent to the Consulate. Respondent initially stated ICE submitted Petitioner's travel document application to the Bangladesh Consulate on February 11, 2025, and then subsequently retracted that statement after ICE realized the travel document request was not submitted to the Consulate on February 11, 2025. Respondent was unsure if the documents were submitted to the Consulate on March 6, 2025, so "out of an abundance of caution," ICE *anticipated* on resending the travel document requests to the Consulate again on April 25, 2025.

"Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government." *Martinez*, 2019 WL 5968089, at *10 (citing

REPORT AND RECOMMENDATION - 10

*Sajous v. Decker*, No. 18-2448, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018) ("the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable"); *Dukuray v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner)).

The four-month delay in Petitioner's removal *after* Petitioner signed the travel document request and allowed his photograph to be taken on February 5, 2025, was not attributable to him.

Accordingly, the Court should hold that the fourth and fifth factors favor Petitioner.

        e.  Likelihood of Final Order of Removal

The final factor involves consideration of "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal*, 358 F. Supp. 3d at 860). Both parties agree that this factor weighs in favor of the Government.

In sum, four of the six factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Only one of the factors weigh in favor of the Respondent. Accordingly, Petitioner's removal has become unreasonably prolonged and the Court should hold that due process requires he be granted a bond hearing.

REPORT AND RECOMMENDATION - 11

CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. # 12) should be DENIED, and the Court should order the Government to provide Petitioner with an individualized bond hearing. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on July 11, 2025, as noted in the caption.

Dated this 26th day of June, 2025.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12

REPORT AND RECOMMENDATION - 13