UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANISUR RAHMAN,

                          Petitioner,

v.

PAMELA BONDI, ET AL.

                          Respondents.

Case No. 2:24-cv-02132-JHC-TLF

ORDER GRANTING IN PART
PETITIONER'S REQUEST FOR
ATTORNEY FEES AND COSTS
UNDER THE EAJA

The petitioner requests attorney fees and costs. Dkt. 38; Dkt. 51. He asserts both the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and the common law. Dkt. 38 at 3, 7. Petitioner also seeks an enhanced rate above the EAJA's maximum statutory rate, urging this Court to utilize the *Laffey* matrix[1] or alternatively an hourly rate of $650.00. Dkt. 38 at 11, 14; Dkt. 50 at 4. Respondents do not contest petitioner's request for fees in general, but oppose an enhanced rate above the EAJA's statutory rate. Dkt. 47 at 1-2.

Petitioner's request for attorney fees and costs (Dkt. 38; Dkt. 51), is GRANTED in part; petitioner is entitled to an enhanced rate under the EAJA, this Court declines to utilize the *Laffey* matrix and instead utilizes the alternative $650.00 hourly rate.

I.    BACKGROUND

---

[1] *See Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 372-375 (D.D.C. 1983), *affirmed in part, reversed in part on other grounds*, 746 F.2d 4 (1984). The *Laffey* matrix originates from the U.S. District Court for the District of Columbia, and that Court was assessing market rates in the Washington D.C. area, including consideration of an attorney's years of experience.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 1

**A. Petitioner's Habeas Petition**

Petitioner is a citizen of Bangladesh. Dkt. 21 at 1. He entered the United States and was detained on June 21, 2024. Dkt. 21 at 1. Thereafter, he was held at the Northwest ICE Processing Center in Tacoma, Washington pending his removal. Dkt. 21 at 1.

Petitioner unsuccessfully claimed asylum, citing persecution from Bangladesh's government. Dkt. 1 at 4-5. As petitioner was ineligible for asylum, he was subject to immediate removal under 8 U.S.C. § 1225(b)(B)(iii)., but remained in detention. *Id*.

On December 23, 2024, petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. Petitioner argued his detention was unlawful because despite "his removal order [being] final" and "there [being] nothing preventing the government from executing that order . . . the government has taken no action," meaning he was "in limbo, neither released nor removed." Dkt. 1 at 7. Petitioner requested either his immediate release on bond or a bond hearing. Dkt. 1 at 9.

On July 11, 2025, this Court denied respondents' motion to dismiss and ordered petitioner be provided with an individualized bond hearing. Dkt. 22. The Tacoma Immigration Court held a bond hearing on August 5, 2025, and denied bond. Dkt. 29 at 2. On August 7, 2025, petitioner moved to enforce this Court's July 11, 2025, order alleging he was still unlawfully being subjected to indefinite detention. Dkt. 29. In response on November 12, 2025, this Court ordered an evidentiary hearing. Dkt. 42. Petitioner was removed to Bangladesh on November 11, 2025, and no evidentiary hearing was held. Dkt. 43; Dkt. 44.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 2

**B. Petitioner's Attorney Fee Request**

On October 8, 2025, petitioner moved for attorney fees and argues, first, fees should be awarded under the EAJA, which permits this Court to award fees to a party that prevails against the government. Dkt. 38 at 3; 28 U.S.C. § 2412(d)(1)(A). Second, he asserts the common law, alleging the government acted in bad faith. Dkt. 38 at 7; 28 U.S.C. § 2412(b). On January 16, 2026, petitioner filed a "supplemental application" for attorney fees under the EAJA for activities "cover[ing] the remainder of his motion to enforce and also time to prepare his EAJA applications." Dkt. 51.

Petitioner asks this court to utilize an "enhanced" rate rather than the EAJA's statutory rate of $125.00 per hour (or $251.81 when adjusted for local cost of living). Dkt. 38 at 10-11, 14; 28 U.S.C. § 2412(d)(2)(A).

Petitioner argues the complexity of this case, and the expertise required to litigate it, satisfies the "special factor" clause of 28 U.S.C. § 2412(d)(2)(A), permitting an enhanced rate above the EAJA's statutory rate. Dkt. 38 at 11. He points to the "hourly rates established in the *Laffey* Matrix" as "reasonable market rates for attorneys with the distinctive knowledge and specialized skill of petitioner's counsel." Dkt. 38 at 14. Under the *Laffey* matrix, which accounts for an attorney's years of experience, he suggests the following hourly rates for his three attorneys: Kelly Vomacka ($1,141.00), Adam Boyd ($948.00), and Hilary Smith ($473.00). Dkt. 38 at 14.

Alternatively, petitioner proposes this Court "award enhanced fees of at least $650 an hour, as the declarations in support of enhanced fees give that figure specifically." Dkt. 50 at 4.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 3

Respondents "oppose Petitioner's request to the extent it seeks the recovery of fees at an enhanced hourly rate because Petitioner has not demonstrated an entitlement to the enhanced rates he requests." Dkt. 47 at 2. Respondents thus ask this "Court to reduce the fees requested to reflect the EAJA statutory rate . . ." Dkt. 47 at 1.

Petitioner's initial and supplemental fee requests claim a total of 88.9 hours worked (82.8 hours by Vomacka, 4.8 hours by Boyd, and 1.3 hours by Smith). Dkt. 38-1; Dkt. 38-2; Dkt. 51-1. Under the three bases for calculating fees proposed above, petitioner's fee request would total either: (1) $99,640.10 under the *Laffey* matrix; (2) $57,785.00 under the petitioner's alternative $650.00 rate; or (3) $22,388.57 under the EAJA's statutory rate. Dkt. 38 at 10, 14; Dkt. 38-1; Dkt. 50 at 4; Dkt. 51 at 2; Dkt. 51-1.

## II.   DISCUSSION

### A. Petitioner's Entitlement to Attorney Fees

"For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002); *see also* 28 U.S.C. § 2412(d)(1)(A).

Here, respondents do not dispute the first two requirements listed above. *See generally* Dkt. 47; Dkt. 52. Instead, respondents only substantively dispute the third requirement "to the extent [petitioner] seeks fees calculated using an enhanced hourly rate" above the EAJA's statutory rate. Dkt. 47 at 2.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 4

Petitioner is a prevailing party as this Court ordered, among other relief, that he was entitled to an individualized bond hearing. Dkt. 22; *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005) (holding a litigant is a prevailing party if they both (1) achieve a material alteration in the legal relationship of the parties; and (2) the alteration is judicially sanctioned); *Buckhannon Bd. And Care Home Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (holding a prevailing party is one who was awarded at least some relief by the court).

Further, "the burden is on the government to establish substantial justification for its position," *Koonwaiyou v. Blinken*, 724 F. Supp. 3d 1222, 1232 (W.D. Wash. 2024), a burden which respondents here opted to waive. Dkt. 47 at 2.

In sum, there is no dispute petitioner is entitled to fees under the EAJA. Rather, the parties contest the amount of fees under the EAJA that petitioner is entitled to.

**B. Petitioner's Entitlement to an Enhanced Rate**

Under the EAJA's statutory rate, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a *special factor*, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (emphasis added).

Petitioner argues this matter presents a 'special factor' under 28 U.S.C. § 2412(d)(2)(A). Dkt. 38 at 11. He "seeks an enhanced fee award at market rates because he would not have prevailed in this action absent counsel without 'distinctive knowledge or specialized skill needful for the litigation in question.'" Dkt. 38 at 11 (quoting *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)).

Three elements must be met to satisfy 28 U.S.C. § 2412(d)(2)(A): (1) whether counsel possesses "distinctive knowledge" and "specialized skills"; (2) whether this knowledge or skills were "needful to the litigation in question"; and (3) whether competent counsel was "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912-15 (9th Cir. 2009).

**1.  Distinctive Knowledge and Specialized Skill**

For the first element, "immigration law expertise, by itself" is insufficient "without a showing that the attorneys possess distinctive knowledge or specialized skill necessary to this litigation." *Nadarajah*, 569 F.3d at 913. Here, petitioner shows that the three attorneys involved (Vomacka, Boyd, and Smith) "have distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law and litigation involving the rights of detained immigrants." *Id.* at 912.

Vomacka has practiced since 1990. Dkt. 38-2. Since October 2024, she has been an associate at Gibbs Houston Pauw, an immigration law firm, and she handles matters including seeking writs of habeas corpus. Dkt. 38-2; Dkt. 38-3. Matt Adams, who has been the director of the Northwest Immigrant Rights Project ("NWIRP") for nearly 30 years, is familiar with Vomacka's work, and states in his declaration that Vomacka is "well-regarded as an expert in the intersection of criminal and immigration law, and she has a particularly deep knowledge of constitutional law" and "is well positioned to apply those special skills and knowledge in support of federal habeas litigation." Dkt. 38-5. Melissa Campos-Castaneda, a member of the American Immigration Lawyers Association ("AILA") for over 18 years, declared she is also familiar with Vomacka's work, describing her as having "distinctive knowledge and

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 6

specialized skill in post-conviction relief" which "she is able to adapt" to address "federal litigation for immigrants." Dkt. 38-6. Vomacka also explained that Smith is an associate at the firm who assisted her in this matter.  Dkt. 38-1; Dkt. 38-2.

Boyd graduated from law school in 2013. Dkt. 38-4. Since August 2020, he has been a managing attorney at Gibbs Houston Pauw where he oversees immigration habeas corpus actions among other matters. Dkt. 38-4. Adams declared he is also familiar with Boyd's work, noting "he has extensive experience in all aspects of immigration law, including federal litigation" and that Boyd "is one of the few attorneys in the state who has the knowledge and skills necessary to vindicate the rights of" petitioner. Dkt. 38-5. Campos-Castaneda similarly attested to Boyd's specialized experience in complex immigration matters, noting "[h]e is one of few attorneys who accepts cases that other attorneys are unwilling to handle because the cases are too complex." Dkt. 38-6.

### 2.  Needful to the Litigation in Question

The Ninth Circuit upheld enhanced fees in an immigration matter that "involved more than established principles of law with which the majority of attorneys are familiar." *Nadarajah*, 569 F.3d at 914. To illustrate, the Ninth Circuit cited matters similar to petitioner's case which concerned "indefinite detention" and whether there was a "significant likelihood of removal in the reasonably foreseeable future."  *Id.*; *see also, e.g.*, Dkt. 1 at 6-8; Dkt. 12 at 2. Here, as described in the declarations above, petitioner demonstrates his matter required counsel with "'knowledge of . . . esoteric nooks and crannies of immigration law . . .'" *Nadarajah*, 569 F.3d at 914 (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005)).

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 7

Petitioner's "case required knowledge of immigration and habeas corpus law" and "also required knowledge of the law and process governing removal, and it involved an issue of first impression about the limits of prolonged detention," Dkt. 38-6, and the above declarations attest that petitioner's counsel possessed this distinctive knowledge and specialized skill.

### 3.  Other Counsel Not Available at the Statutory Rate

Petitioner must show "that qualified counsel was not available for this litigation at the statutory maximum hourly rate." *Nadarajah*, 569 F.3d at 915. For this showing, "'[n]o one expects the plaintiffs to conduct statistical surveys.'" *Id.* (quoting *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 493 (1st Cir. 2000)). Rather, a petitioner can, for example, submit a declaration "'say[ing], with at least modest support . . . that as a practical matter the plaintiffs would be unable to find a[n] . . . expert for $125.'" *Id.* (quoting *Atl. Fish Spotters Ass'n*, 205 F.3d at 493). Under these authorities, petitioner's provided declarations are sufficient.

In *Nadarajah*, the Ninth Circuit upheld this factor based on a declaration from Marc Van Der Hout, a San Francisco-area "immigration specialist" and attorney, which stated the "'vast majority of the immigration bar of the country does not engage in federal court litigation'" and "'only a very small number would be willing to take on a case of this complexity.'" *Nadarajah*, 569 F.3d at 912, 915. As such, "'[t]here are no qualified attorneys to my knowledge who would have undertaken such litigation at the EAJA statutory rate of $125.'" *Id.* at 915.

Here, Vomacka's declaration states that she, Boyd, and Smith "regularly charge considerably more than the statutory fee, even for services that do not require

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 8

distinctive knowledge or specialized skill" and that she was "not aware that any other lawyer would have taken it on for the statutory fee." Dkt. 38-2.

Adam's declaration states he is "very familiar with the issues that were litigated in this case" and "with most immigration attorneys in Washington State" including those "who litigate in federal courts." Dkt. 38-5. He is also "generally familiar with the range of fees charged by immigration attorneys in Washington State" and "successfully vindicating [petition's] rights required a level of skill and knowledge that is not available in Washington State at the statutory EAJA rate." Dkt. 38-5. Campos-Castaneda, states in her declaration that cases "that require federal litigation are typically regarded as too complex and not profitable" and "[b]ased on my experience . . . I do not believe it would have been possible to find an attorney willing to represent [petitioner] at the statutory EAJA rate." Dkt. 38-6.

Respondents argue that "[w]hile Petitioner's supporting declarations that the declaring attorneys are not aware of other experienced attorneys who would have competently handled the case for the EAJA statutory rate," they "do not declare that no attorneys with the requisite experience would have taken on the case for less than $1141.00 an hour." Dkt. 47 at 3. Thus, beyond contesting the specific amount of enhanced fees beyond the EAJA's statutory rate, the government did little to "rebut [petitioner's] showing that qualified counsel was not available." *Nadarajah*, 569 F.3d at 915.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 9

Petitioner thus established that his matter involves a special factor as described in 28 U.S.C. § 2412(d)(2)(A) and the test detailed in *Nadarajah*.[2]

**C. Amount and Reasonableness of Fees**

Hourly rates are reasonable where they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Petitioner argues the "hourly rates established in the Laffey matrix are reasonable market rates for attorneys with the distinctive knowledge and specialized skill of [petitioner's] counsel" in the Western District. Dkt. 38 at 14.

The Ninth Circuit affirmed a district court's decision not to deploy the *Laffey* matrix in, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). The Ninth Circuit observed that the rates were relevant to Washington D.C. area market rates, and noted that it was "questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital." *Id.*

---

[2] Petitioner also asserted the common law as a basis for fees by alleging respondents acted in bad faith. Dkt. 38 at 7; Dkt. 50 at 5.

The EAJA provides the "United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the *common law* or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b) (emphasis added). "The cases interpreting this section, as well as the plain language of the statute itself, indicate that this subsection is not subject to the fee cap in subsection (d)(2)(A)." *Cazares v. Barber*, 959 F.2d 753, 754 (9th Cir. 1992). "This includes an award against a party acting in *bad faith*." *Id.* (emphasis added); *see also Berg v. Berryhill,* No. 3:17-cv-05611-DWC, 2018 WL 2317611, at *3 (W.D. Wash. May 22, 2018) (noting the EAJA's incorporation of the common law allows attorney fee awards "at market rates" in cases involving bad faith by the government).

In sum, it appears the common law is another alternative basis for obtaining enhanced fees over the EAJA's statutory rate. Here, this Court holds that enhanced fees are warranted under the special factor analysis from 28 U.S.C. § 2412(d)(2)(A); therefore, this Court will not address petitioner's common law argument.

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 10

This Court has been skeptical of the *Laffey* matrix. *Propet USA, Inc. v. Shugart*, No. C06-0186-MAT, 2008 WL 11506737, at *5 (W.D. Wash. May 2, 2008) ("he has made no showing – outside of his assertion that Deblois's rate is consistent with the Laffey Matrix – as to the reasonableness of the rates of these individuals."); *Xiaosi Hu v. Munita*, No. 2:19-cv-01302-RAJ, 2020 WL 2199473, at *2 (W.D. Wash. May 6, 2020) (noting the "sole basis for Ms. Collins' $350 hourly rate appears to be an application of the Laffey matrix" and "the Court questions the applicability of this metric as there appear to be very few cases applying the Laffey matrix to requests for EAJA fees in the Ninth Circuit."). This Court also declined to utilize the *Laffey* matrix in another immigration matter despite finding an enhanced EAJA rate was otherwise appropriate. *Koonwaiyou*, 724 F. Supp. 3d at 1235-36.

Here, this Court declines to utilize the *Laffey* matrix.

In determining the reasonableness of hourly rates for fee awards, this Court considers "the prevailing market rates in the relevant community." *Bell v. Clackamas County,* 341 F.3d 858, 868 (9th Cir. 2003). This Court may rely on evidence such as, "'[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney. . . .'" *Koonwaiyou*, 724 F. Supp. 3d at 1235 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

The declaration of Julia C. Hunter, a 10-year member of the AILA, opined that she was "not aware of any qualified attorney with the depth of skills and experience required for this case who would have been available to handle the complaint at the statutory EAJA rates" and that "[b]ased on my knowledge of immigration litigation, the

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 11

minimum hourly rate that a qualified attorney would charge for representation in this case is at least $650.00 per hour." Dkt. 38-7; *see also Koonwaiyou*, 724 F. Supp. 3d at 1236 (finding an $850 rate was reasonable for a more experienced lawyer, and $450 for the less experienced lawyer, in immigration law).

This Court will thus utilize the $650.00 hourly rate proposed by petitioner.

### III.   CONCLUSION

For the reasons stated above, it is ORDERED that petitioner's request for attorney fees and costs, Dkt. 38; Dkt. 51, is GRANTED in part. Petitioner's total fee and costs award shall be **$57,785.00**.

Dated this 6th day of February, 2026.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING IN PART PETITIONER'S
REQUEST FOR ATTORNEY FEES AND COSTS
UNDER THE EAJA - 12